In the Matter of James A. DANN and Marga Dann, Bankrupts.

Nancy KUNZE, Trustee, Plaintiff,

v.

SOUTHEAST FIRST NATIONAL BANK OF MIAMI and Marga Dann, Defendants.

Bankruptcy No. 79–53–Orl–P.

United States Bankruptcy Court, M. D. Florida, Orlando Division.

Dec. 27, 1979.

Jules S. Cohen, Orlando, Fla., for plaintiff.

Richard A. Leigh, Orlando, Fla., for Southeast First Nat. Bank of Miami.

David Kerben, Orlando, Fla., for Dann.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER in controversy involves a mobile home which according to the trustee is property of the estate free and clear of any interest of the defendant, Southeast First National Bank of Miami (the Bank). The matter is presented for this Court's consideration by a Motion for Summary Judgment filed by the trustee, Nancy Kunze, who contends that there are no genuine issues of material fact and that she is entitled to a judgment as a matter of law. The trustee also filed a Motion to Dismiss the Bank's counterclaim which seeks the entry of an order by this Court abandoning the mobile home. The facts as appear from the record are indeed without dispute and can be briefly summarized as follows:

On October 20, 1972, Marga Dann, the Bankrupt involved in this controversy purchased the mobile home in question. The purchase was financed through the Bank which promptly perfected a lien on the mobile home by causing the recordation of its lien on the title certificate issued by the Department of Motor Vehicles of this State. Although the Bankrupt kept up the monthly payments called for by the financing agreement for a while, at one point in time she became delinquent in the payments. The Bank rather than peacefully repossess the mobile home or institute an action of replevin, applied for a duplicate title in its own name. The Department of Motor Vehicles in due course issued a duplicate title which carried the same serial number as the original and indicated the Bank to be the owner of the mobile home and did not indicate any lien interest on the mobile home.

Shortly thereafter, the Bankrupt with the consent of the Bank, resumed the contractual payments. The Bank reinstated the loan, but did not release the duplicate title nor did the Bank file a lien satisfaction

with the Department of Motor Vehicles. It is further without dispute that the Bankrupt never parted with possession of the mobile home and lived in the mobile home peacefully during all times pertinent to this controversy. Some time prior to July 5, 1978, the Bankrupt became delinquent again on the contractual payments. At this time, the Bank did file an action for replevin of the mobile home, but before the action reached a resolution in the state court, the Bankrupt filed her voluntary petition in this Court which, of course, triggered the automatic stay provisions of the Bankruptcy Rules, Rule 601, which in turn prevented the Bank to seek the enforcement of its interest in the mobile home.

This is the undisputed factual background of this controversy to which this Court is called upon to apply the controlling legal principles. Of course, it is no surprise that while the parties basically are in agreement as to the controlling facts of this controversy, they are in a definite disagreement as to the legal principles which govern and furnish the resolution of this controversy.

It is the contention of the trustee that since Article 9 of the Uniform Commercial Code, as adopted in this State, attaches no significance to title, that the transaction in question is, in fact, a security transaction which is governed by Article 9 of the Code regardless of who appears to be the record owner of the chattel in question. *Florida Statutes,* § 679.9–202 (1977). This being the case, so argues the trustee, any security interest, to be valid against the trustee, must be perfected pursuant to the applicable provisions of the Code and the Florida Statutes governing lien interests in motor vehicles and in certain types of mobile homes. *Florida Statutes,* §§ 679.9–301, 679.9–302(3), and 319.27. Accordingly, unless a lien is recorded on the title certificate, no lien interest will be recognized and enforced against the trustee not only by virtue of *Florida Statute,* § 319.27 but also by virtue of Sec. 70c of the Bankruptcy Act which grants the trustee the power of an ideal judgment lien creditor whose interest prevails over nonperfected contractual liens.

In opposition to this proposition, the Bank argues that it had a valid and properly recorded lien interest on the original title certificate which was never cancelled as a matter of record, it acquired a title and ownership interest in the mobile home when it acquired the duplicate title and thus its interest is not subject to the provisions of Article 9 of the Code and accordingly, its interest is superior to any interest of the Bankrupt and to any interest which may be claimed by the trustee.

There is no question that the Bank originally had a perfected security interest in the mobile home and was not the owner of the mobile home, but merely a lienholder. It is equally without dispute that the Bank never repossessed the mobile home, even though the Bankrupt became delinquent in payment, and never acquired title to the mobile home either through voluntary repossession or through judicial proceedings. While it is true that the issuance of the duplicate title ostensibly indicated the Bank to be the record owner of the mobile home, it is equally clear that the relationship between the Bank and the Bankrupt was at all times one of a credit buyer and a financier rendering the transaction a security transaction subject to Article 9 of the Code as adopted by this State. See, *In re Yale Express Systems, Inc.,* 370 F.2d 433 (2d Cir. 1966). This being the case, the Bank would, no doubt, have a valid enforceable interest in the mobile home unless it's previously recorded lien on the original title certificate would not stand over and continue to protect the lien interest of the Bank in the mobile home.

The trustee cites the case of *In re Tillery,* 571 F.2d 1361 (5th Cir. 1978) in which an automobile lease was found to be, in essence, a security agreement in which the "lessor's" interest was inferior to the rights of the trustee in bankruptcy because the security interest was unperfected. However, since in *Tillery, supra,* there was absolutely nothing in the title records to place one on notice of the secured party's lien interest, the case is clearly distinguishable from the instant situation.

It is apparent from an examination of the undisputed facts in this case, that any creditor of the Bankrupt, upon an examination of the title records would be placed on notice of the Bank's interest, as the records reveal that the Bank has a valid and properly recorded lien on the original title certificate which was never satisfied. Although the duplicate title certificate, which indicates the Bank to be the record owner of the mobile home, is not representative of the true relationship between the Bank and the Bankrupt, it is apparent that, in light of the fact that one searching the record would be placed on notice of the Bank's lien interest, the purpose of the recordation scheme of Chapter 319 of the Florida Statutes has not been violated.

Accordingly, this Court is satisfied that a creditor of the Bankrupt would have been placed on notice of the Bank's lien and therefore could not have obtained an interest superior to the rights of the Bank; consequently, the trustee's interest in the mobile home is subject to the Bank's validly perfected security interest which cannot be invalidated for the benefit of the estate.

Although it is the trustee's motion for summary judgment which is presently before the Court, the great weight of authority holds that a court may dispense with the formality of a cross-motion and grant summary judgment for a resisting non-moving party if the record warrants such a result. *Morrissey v. Curran*, 423 F.2d 393 (2d Cir. 1970); *Missouri Pacific Railroad Co. v. National Milling Co.*, 409 F.2d 882 (3d Cir. 1969); *United States v. Cless*, 150 F.Supp. 687 (M.D.Pa.1957). Therefore, since there are no genuine issues of material fact, this court, governed by the legal principles discussed herein, finds that the Bank is entitled to summary judgment as a matter of law.

Furthermore, although the Bank has not requested relief from the automatic stay of Bankruptcy Rule 601, this Court is satisfied that, since there is no evidence before the court as to any existing equity in the mobile home, the automatic stay should be lifted to permit the Bank to foreclose on its security, provided however, that if the mobile home is sold and surplus monies are realized, that such surplus monies shall be relinquished to the trustee.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the plaintiff's Motion for Summary Judgment be, and the same hereby is denied. It is further

ORDERED, ADJUDGED AND DECREED that the plaintiff's Motion to Dismiss the Bank's counterclaim be, and the same hereby is denied. It is further

ORDERED, ADJUDGED AND DECREED that summary judgment be, and the same hereby is, entered in favor of the defendant and against the plaintiff and that the defendant's security interest in the 1973 Tiffany Mobile Home be, and the same hereby is, declared to be valid and enforceable against the trustee. It is further

ORDERED, ADJUDGED AND DECREED that the automatic stay of Bankruptcy Rule 601 be, and the same, hereby is, vacated and modified to allow the defendant to foreclose on its security interest in the 1973 Tiffany Mobile Home.